May it please the Court, Jonathan Libby appearing on behalf of the Appellant Matthew Henry Weber. Your Honor, this case raises several challenges to special conditions of supervised release. Now, although these are, in fact, special conditions, they've essentially become standard in these types of cases, despite the fact that special conditions are not supposed to be one-size-fits-all. Conditions are supposed to be narrowly tailored based on the particular circumstances of the defendant in each individual case, and the least restrictive condition necessary to achieve the goals of supervision must be imposed. Now, here, as part of Condition 9, sex offender treatment, Mr. Weber was directed to submit himself to plethysmograph testing. Under this condition, he's required to undergo a very intrusive, degrading, and embarrassing test, where literally a machine is strapped to his penis, and they test various states of arousal after they show him various pictures. This test under the DSM has been found not to be reliable or valid in clinical assessment. No court, including this court, has accepted the use of the penile plethysmograph in terms of admission of evidence. Because it doesn't pass the Daubert test. And we would submit that, given the fact that it is not widely accepted in terms of clinical assessment, that it's not appropriate in this case. And you didn't put any record on it. I mean, I gather there's a literature and a set of experts and lots of interesting things to be said about this, but there's no record here. Well, there's a record in terms of Mr. Weber's history. I understand that, but in terms of the reliability of these, the use of what kinds of images are used to generate the reactions, what the alternatives are, which is the key issue under the guidelines. I mean, what else could have been done toward a similar end that would have been as or more effective and less intrusive? There's just no record. Well, there's a record in terms of the various articles that were presented to the courts. The DSM was cited to the court. So literature was, in fact, presented to the court, though perhaps not as evidence per se. It was presented to the court. And it was in response to the PSR, is that what it was? That's right. In the various sentencing papers, all of these, all of this literature was cited to. So the court was certainly made aware of the fact that this type of testing is not widely accepted in the scientific community. And it's, as I said, a very intrusive test. And is this the type of test that should be imposed on someone like Mr. Weber, who has no history of child molestation? He's never had improper contact with a child. So what's the purpose of this test? Now, we did not object to the treatment condition itself, but use of this type of testing within the treatment program is just not appropriate under the facts of this case. And certainly it was not our burden to demonstrate why it wasn't appropriate. It was the government's burden to demonstrate why it was. And certainly that did not take place here. Is there any case law supporting this? Well, there's various case law that discusses how it's not widely accepted in the scientific community and doesn't pass Daubert. In fact, in this court, the Ganser decision, 232, Fed Third, 1258, it makes very clear that no court has ever accepted results from this test as evidence in any case. It's polygraphed, too, and yet it's not unusual to have polygraph as a condition. Well, but of course polygraph is not as intrusive a condition as this particular test. Now, we are objecting to the polygraph condition, which was where I was going to get to next. And we're objecting to the polygraph condition under Antelope. Isn't the implication of Antelope that the condition includes his right to object to any questions that incriminate him? So it's sort of a circular or self-policing problem? Well, it's not clear from Antelope whether or not the imposition of the condition itself is appropriate. What it does say is if you are subjected to polygraph testing, then you do still have the right under the Fifth Amendment to refuse to answer certain questions. And therefore, there's no Fifth Amendment problem with imposing it? Well, but it's not clear that, of course, that the defendants who are being forced to undergo the testing know that they have the right. And, in fact, my client, for example, underwent the polygraph test just last week without any advance warning and had been told by the judge or by the person administering it that there are no problems in terms of answering all of the questions because he's already been convicted. So there's no real legal problems. And, of course, that's not correct. You know, we don't know what could come out. The person presumably could object if he was forced to answer. And I understand he doesn't know, but that's part of the Fifth Amendment self-executing. That's the problem. It's not self-executing. Well, though we would argue that it is, in fact, self-executing here because he's put in the situation where he essentially has to take the test or suffer the consequences of being violated. If he refuses to take the test... Well, but only if we only once he gets violated. What happened in Antelope is he got violated. So he managed to contest it after he was violated, but he still had to undergo the test and answer the questions. And that's what we're left with. We don't know whether the imposition of the condition itself was appropriate. Also, as part of Condition 9, there's a forced medication provision. What the condition says is as part of sex offender treatment, he must take all prescribed medications. But you didn't discuss the Williams case at all for some reason. And I apologize to the Court. Is there some reason why you don't find that adequate? The Williams case is, in fact, the closest case on point. And I do apologize to the Court for not raising Williams in the briefing. Williams, of course, dealt with antipsychotic medication. We don't know whether this condition, in fact, is... And one fears, since Mr. Weber had been taking antipsychotic medication while he was incarcerated, and there was a condition imposed here for mental health treatment. But taking prescribed medications was not imposed here as part of the mental health treatment condition. It was imposed as part of the sex offender treatment condition, which seems to suggest it could involve some type of medication dealing with his sex offender status, which could involve chemical castration or something along those lines. And we simply don't know what it's going to be. So I think the Court should follow Williams in striking this condition. And certainly the Court gave no explanation for why this particular provision should be included. So under Williams' reasoning, the condition needs to be struck. Well, under Williams' reasoning, you'd get a remand. That's what happened to Williams. For a better explanation as to why it might be medically necessary. That's right. That's right. Though I can't imagine what in this case could demonstrate that in terms of sex offender treatment. We have also objected to challenge the condition that he not possess any materials that depict or describe sexually explicit conduct as described by statute. The problem with the condition as worded is that it sweeps much too much protected speech under its umbrella. Under the condition as worded, he cannot possess any book or any videotape of a program that has any type of simulated sex scene involving an adult. This would include afternoon soap operas. Has that provision been approved on several cases? Well, in Riordan, it was an issue, though not this identical condition. A very similar condition, certainly, was an issue in Riordan. And the Court approved of it in Riordan because of the facts in Riordan. And specifically discussed Riordan's involvement with a known pedophile and his interest in violent graphic depictions of child rape and murder. We certainly don't have anything like that here. And what we have here is a situation where he can't possess many R-rated movies, PG-rated movies, anywhere where there's a simulated sex scene. The Supreme Court actually struck down a provision of the Child Pornography Prevention Act just because under that statute it could prevent someone from possessing Oscar-award winning films because it involves simulated sex scenes. And I'm about to run out of time, so I will reserve the balance. Thank you. May it please the Court. My name is Jennifer Corbett, Assistant United States Attorney, appearing for the Government on this case. I'd like to start by saying that the record in this case supports the Court's imposition of the conditions of supervised release. And those conditions, the conditions that are being challenged by the defendant, were both reasonably necessary for the goals of supervised release as well as no greater than reasonably necessary for the purposes of supervised release. The challenge conditions... With regard to the medication condition, for example, we have no idea what we're talking about. That's correct, Your Honor. The Court recognized that Mr. Weber needs supervised release and while he's on supervised release further needs sex offender treatment. The Court did not go ahead in this case and prescribe the particular details of what that treatment would include. And that would be left to the treatment provider. And under fellows, that's permissible for the Court to delegate those details to a trained and experienced professional. With regard to medication? Medication is a different issue, as Your Honor pointed out. With respect to Williams, an involuntary medication, that is a different issue in terms of the findings that are required. But there weren't any findings here, that's my point. That's correct, Your Honor. There is evidence in the record that would support the imposition of medication, but the District Court did not actually make the findings. Part of the reason is that the defendant did not object in the District Court to the medication or the imposition of the condition. In fact, the defendant at all times voluntarily took his medication and recognized, as noted in the PSR, that he benefited from the medication. So unlike Williams, there's not a record of competency that needed to be restored by involuntary medication or an issue regarding side effects. We just don't have that kind of record developed here the way it was in Williams. So I would distinguish the facts in Williams from the facts in this case. But I think Your Honor makes a good point that if a Williams finding were needed to be made, then it would be. I want to go back to the point where he did object. You mentioned the trained operators. There's no information in the record about the training they received. Do you know anything about that? Your Honor, the sex offender treatment program that the court imposed would be administered by professionals who are trained to give that type of particular treatment. And it is a type of particular treatment. And they say there's no consensus as to the training. So what training do these people have that are going to be operating this program? You don't know who they are, do you? No, that is. Pardon me? You know who manufactures the gadget? No, Your Honor. So, I mean, it's a blank thing. And as I understand the literature, and I want to see if you have the same understanding, in order to test whether he's making progress or not, he's shown child pornography. Is that correct? In this case, it would depend on the particularities of what his problem is in child pornography. Well, they want to see whether he's now likely to be a recidivist or not. Isn't that right? They would want to know that, but it's not necessary that a particular type of instrument, physiological instrument, be used to find out whether he goes for child porn or not. They have to show him child porn. Not necessarily. The literature indicates that. I want to ask you, because I do think it's quite vital, doesn't that involve violating the federal statute itself? How do they test him without distributing child pornography? Your Honor, it's not in this record. However, the way that this treatment works is that it does not show sexually explicit images of children. How do I know that? When I read what literature there is, they do show it. On what basis are you assuring me that that doesn't happen? There is literature regarding the administration of the test in which they describe... But you don't know who's administering the test. That's correct, Your Honor. So how can you know what they distribute? Your Honor, it also is in the literature, and I think... The literature is all over the place. There are conflicts in the literature, Your Honor. There are what? Conflicts in the literature. Conflicts. We don't know what he's being sentenced to. And as counsel pointed out, it's an extremely invasive thing, an assault on the person's personality. You're defending it not knowing what it is. Well, and Your Honor, were we before you defending this, for instance, on someone who's on trial here, who not only once but twice... Why isn't the rationale of Williams transposed directly applicable here? That is, given the fact that this is a highly intrusive condition and one which could have many forms, that at a minimum, the district court has to make a specific inquiry and has to assess a difference of degree, Your Honor, and the interest that's described in Williams in not being administered psychotropic medications involuntarily. It is an issue of great, great consequence, and I submit greater consequence than the application of a physiological measuring instrument. You say physiological. It's highly intrusive. Don't you recognize that? It is intrusive, Your Honor. However, it's not required for the sex offender treatment program. That is left to the discretion of the treatment provider, depending on... That would have been a problem. Well, it would be the program provider that's selected by probation. That's very reassuring. If the probation officer or if the defendant feels that the particular instrument being administered is not reasonably related to his treatment, then there is always the option to return to the district court and request that the district court... I think what Judge Noonan is asking is this. If this particular operator decided that the way to run his system was to show this man 75 awful images of child porn of different varieties to see how he reacted, that would be consistent with the condition. While if the judge had an opportunity to review it, he might think it wasn't such a hot idea for many reasons, including promoting recidivism rather than ending it. But he hasn't reviewed it. He doesn't know what they're going to do. No, and the case law doesn't require each type of treatment and each aspect of treatment to be reviewed. Both because of its physical intrusiveness, its psychological intrusiveness, and the kind of material that can be used to forward it, which is both illegal and otherwise objectionable, has unusual characteristics. It's nothing like the other conditions that we're talking about here. I think on the record in this case, that option of a treatment provider is a viable option for it to be considered. However, it's not required by the court in this case. The court, the district court was comfortable, Judge Ferguson was comfortable with leaving the details, including that to the treatment provider. And as of yet, there is no comparable decision with the decisions like Williams regarding involuntary treatment. To the contrary, other circuits have approved the use of this type of physiological measurement in supervised release conditions. And this court, in the Glanzer case cited by the defendant, has recognized the use of this instrument in treatment and monitoring of sex offenders. So it's not a completely bare record with respect to PPG testing and its use to promote a defendant's rehabilitation. And in this context, the government would submit that. I think it's really the issue that I'm focusing on. What I'm focusing on is whether the given the nature of the condition, whether the judge can, with no further investigation, simply leave it open, wide open for any kind of treatment under any sorts of conditions with any kinds of obscene or pornographic material being used with any, there are various varieties of mechanisms that are used and so on. And the district court is having no say over that. The district court did have the say when the issue was objected to below to look at the record. And the defendant pointed out the DSM provision to the district court. The government pointed out the guidelines promoted by the American Association for the Treatment of Sexual Abusers, which is the recognized What's in the guidelines? The guidelines recommend that for an evaluation and treatment of a sex offender, that physiological measures be used to corroborate. They don't say how, where, when, by whom? They do say that the physiological measures may include able testing as well as plepismograph. And those are the two that are mentioned in this particular supervised release provision. I don't know if he falls in that category or not. I presume that the main reason for attaching criminal penalties to possession of child pornography is to protect children at the other end, to prevent the original exploitation. Because the Supreme Court apparently, if it's a totally virtual situation, it might be protected because there are no people involved. So the person who's watching the virtual representation is not so reprehensible that we attach criminal penalties to him. But if he's watching something that looks exactly the same, but it's real people, we attach criminal penalties. And I'm not sure that's because it makes that person a much worse person than the one who's watching, or whether it's simply a prophylactic exercise. You're punishing somebody to kill the market for this stuff because somebody gets exploited at the other end. And that's a different kind of sex offender than one who goes out and abuses kids on the playground. I think Your Honor has a good point in that all sex offenders are not created equal. And the government is not arguing that these conditions should be applied arbitrarily. I think what he's saying is that this is the same kind of pile of conditions that you heap on somebody who has been snatching kids off the playground and abusing them. Well, Your Honor, both a kidnapping offender and this offender have demonstrated a sexual interest in children. It's just a matter of how they have acted upon it. I think there's something pretty strange about the government treating a child pornography viewer by having him view child pornography. It's one thing if you have an actual child sex abuser and you're trying to prevent something worse. But where the crime itself is the child pornography and you're basically having him view child pornography, it's a strange way to prevent it. At least it would seem to me it has to be justified. Anyway, your time is up. Thank you. I will give you one minute. Your Honor, and this was the point I was trying to make. These conditions are applied to all sex offenders as that term has been broadly used by the government. Possession of child pornography in the state of California did not even require one to register with the sex offender registry until a year ago. All of this literature for the plethysmograph deals with child molesters and the treatment of child molesters, not with the treatment of someone who has a one-time conviction of possession of child pornography, where there's no other evidence of inappropriate contact with the child. And that's why it's inappropriate here. Unless the Court has any further questions, I submit. Thank you.
judges: Canby, Noonan, Berzon